**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DYLAN STURGIS               )
     Plaintiff,              )
                           )
vs.                        )      **C.A. No. 1:24-CV-241**
                           )
DIAMOND HOSPITALITY SERVICES )
LLC,                    )
and                     )
PENN STATE COBBLESTONE, LLC, )
     Defendants.          )

**MEMORANDUM OPINION**

### I.     INTRODUCTION

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 26), and the Brief in Opposition (ECF No. 30). Plaintiff brings a four-count Second Amended Complaint alleging (1) Disability Discrimination under the Americans with Disabilities Act Amendment Act, ("ADA") and Pennsylvania Human Relations Act ("PHRA"), (2) Retaliation under the ADA, Family and Medical Leave Act ("FMLA") and PHRA, (3) Hostile Work Environment under all three statutes, and  (4) a Tortious Interference Claim.

### II.     THE ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

Plaintiff Dylan Sturgis began his employment at Cobblestone Hotel and Suites on or about May 2, 2021 in the position of a night audit. ECF No. 20 ¶ 8, 12, 15.[1] He maintained a full-time,

---

[1] The business entity addresses for both Diamond Hospitality Services, LLC, and Penn State Cobblestone, LLC Cobblestone Hotel and Suites, are listed as 1001 State Street, Erie, Pennsylvania 16501. ECF No. 20, ¶ 5 n.1. This Court will assume, for purposes of deciding this

1

Monday-through-Friday schedule and an unblemished employment record, devoid of any formal disciplinary action. *Id.* ¶ 16, 22. Plaintiff was the most senior front desk employee and worked under four different managers during his employment. *Id.* at ¶ 15.

In July 2023, Plaintiff was diagnosed with cancer. *Id.* ¶ 19. Prior to the start of chemotherapy treatment in September 2023, Angela Boyd ("Boyd") became the general manager of the Harborcreek Cobblestone location beginning in August 2023. *Id.* 19, 46. Plaintiff was admitted to the hospital on September 18, 2023 and was not released until November 3, 2023. *Id.* ¶ 20. Defendants were also aware that Plaintiff had been previously diagnosed in 2004 with Asperger's Syndrome. *Id.* ¶¶ 18, 47.

On November 14, 2023, Plaintiff notified Boyd that he would be able to return to work from his chemotherapy treatment on November 16, 2023, but that his return to work papers included a 10-pound lift limit. *Id.* ¶ 21. Upon his return to work, beginning November 24, 2023, Plaintiff was continually scheduled to work every weekend instead of his prior week day shifts. *Id.* ¶ 23. He was informed that Boyd was attempting to find a part-time weekender to fill the weekend shifts. *Id.* ¶ 24. No part-time employee was established to revert Plaintiff's schedule back to Monday through Friday. *Id.*

About four months later, on March 6, 2024, Plaintiff received his first ever written warning for allegedly failing to properly stock breakfast. *Id.* ¶¶ 27, 30. Plaintiff was of the belief that he was not responsible for re-stocking breakfast. *Id.* ¶ 29. Following this, Boyd received a complaint from a guest attempting to check in after midnight. *Id.* ¶ 32. The substance of the guest complaint was that Plaintiff had been observed playing games on his computer. *Id.* Plaintiff states that he had

---

motion, that Penn State Cobblestone, LLC, and Diamond Hospitality Services LLC are joint employers.

previously been granted permission to use his computer when he was not busy at night. *Id.* ¶ 33. Subsequently, on March 21, 2024, Plaintiff's employment was terminated as a result of the complaint[2]. *Id.* ¶ 31.

Based on these factual allegations, Plaintiff presents the following legal claims:

I        Disability discrimination against both Defendants

II       Retaliation against both Defendants

III      Hostile work environment against both Defendants

IV       Tortious interference with contract against Diamond Hospitality

Defendants have moved to dismiss. ECF No. 26. Plaintiff has filed a brief in opposition to the pending motion. ECF No. 30. The motion is fully briefed and is ripe for disposition by this Court.

## III.    STANDARDS OF REVIEW

Under Rule 12(b)(5) of the Federal Rules of Civil Procedure, a defendant may move to dismiss when a plaintiff fails to effectuate proper service. Fed. R. Civ. P. 12(b)(5). "In resolving a motion under Rule 12(b)(5), the party making service has the burden of demonstrating its validity when an objection to service is made." *Martin v. OSHA*, 2017 WL 1326212, at *2 (E.D. Pa. Apr. 11, 2017). District courts possess "broad discretion" when evaluating a motion to dismiss for insufficient service of process. *See Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir.1992). "Where

---

[2] Following the termination, Plaintiff initiated administrative proceedings. A Charge was filed with the Equal Employment Opportunity Commission against Diamond Hospitality on or about May 2, 2024, for which a Notice of Right to Sue was issued on June 5, 2024. *Id.* ¶¶ 57-58. A subsequent Charge was filed against Penn State Cobblestone, LLC, on or about December 20, 2024, with a corresponding Notice of Right to Sue issued on March 7, 2025. *Id.* ¶¶ 59-60. During this period, it was revealed that Plaintiff's personnel records had been inadvertently discarded by the subsequent General Manager, Scott Katren, after Defendants had received notice of Plaintiff's claims. *Id.* ¶¶ 39, 41-42.

a plaintiff acts in good faith, but fails to effect proper service of process, courts are reluctant to dismiss an action." *Ramada Worldwide Inc. v. Shriji Krupa*, LLC, 2013 WL 1903295 (D.N.J. Apr.17, 2013).

In contrast, a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court accepts as true all well pleaded factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A court need not accept as true unsupported conclusions and unwarranted inferences. *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. While a court must accept all factual allegations in Plaintiff's complaint as true, courts are not compelled to accept "unsupported conclusions and unwarranted inferences[,]" (*see Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir.1997)), or "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## IV.    ANALYSIS

### A. Sufficiency of Service

Defendant Pennsylvania State Cobblestone moves to dismiss the claims against it based on Plaintiff's failure to properly serve it. ECF No. 27 ¶ 7. However, the defense of "insufficient service of process" is subject to waiver. *Zokaites Props., LP v. La Mesa Racing, LLC*, 2012 WL 3144127, at *17 (W.D. Pa. Aug. 1, 2012). Under Federal Rule of Civil Procedure 4(h), service must be effectuated unless the corporation—Penn State Cobblestone—executes an effective waiver of service.

Here, a waiver of service has been completed. ECF No. 28. The waiver, executed by Pennsylvania State Cobblestone and filed by Plaintiff plainly states, "I waive any objections to the absence of a summons or of service." *Id*. The waiver was executed on June 5, 2025 after Defendants' pending motion was filed. ECF Nos. 27, 28.

Rule 4(d)(4) of the Federal Rules of Civil Procedure explicitly states that when a plaintiff files a waiver of service, proof of service is not required, and the Rules apply as if a summons and complaint had been served at the time of filing the waiver. Fed. R. Civ. P. 4(d)(4). The filing of a waiver of service under Rule 4(d) has the effect of mooting any motion to dismiss under Rule 12(b)(5) for insufficient service of process. *See, e.g.*, *Kohar v. Wells Fargo Bank, N.A.*, 2016 WL 1449580, at *3 n.7 (W.D. Pa. Apr. 13, 2016) ("The [c]ourt notes that [although the defendant] initially moved to dismiss under Rule 12(b)(5), that aspect of the motion is moot, given that it ... waived service."); *CC Ford Grp. W., LLC v. Johnson*, 2025 WL 1810206, at *9 (D.N.J. June 30, 2025) ("Dismissal would only be appropriate under Rule 12(b)(5) when service is not properly effectuated upon the defendant and that said defendant does not waive service."). Accordingly, this Court will deny Defendants' motion under Rule 12(b)(5) as moot.

**B. The Disability Discrimination Claims[3]**

At this early stage of the litigation, Plaintiff's claim of disability discrimination needs only be "facially plausible and give fair notice to the defendants of the basis of the claim." *Dreibelbis v. Cnty. of Berks*, 438 F. Supp. 3d 304, 313 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (3d Cir. 2002)). For a claim to be "facially plausible," it must be the case that the allegations state, "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim's] necessary element[s]." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). Other district courts in this circuit have described such a pleading standard as deferential. *Doe v. Triangle Doughnuts*, LLC, 472 F. Supp. 3d 115, 126 (E.D. Pa. 2020); *Flynn v. City of Scranton*, 2024 WL 4839367, at *7 (M.D. Pa. Nov. 20, 2024). Lastly, while a prima facie showing is not necessary, a court may analyze the elements of a claim as "analytical guideline[s] in assessing the plausibility" of the claims. *Fabian v. St. Mary's Med. Ctr*, 2018 WL 4145037, at *3 (E.D. Pa. Aug. 30, 2018) (collecting cases).

Defendants seek dismissal of the disability discrimination claim contending that Plaintiff has failed to state a claim upon which relief can be granted. They argue the Second Amended Complaint lacks any factual allegation connecting the adverse employment action to Plaintiff's disability, a necessary element for claims of discrimination under both ADA and PHRA. ECF No. 27, ¶ 9.

To establish a prima facie case of disability discrimination, a plaintiff must allege that: (i) he is "disabled" as defined by the ADA; (ii) he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (iii) he has suffered an adverse

---

[3] The Third Circuit applies the same analysis to disability discrimination claims under both the ADA and the PHRA. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir.1996).

employment decision as a result of discrimination. *Brown v. Saint Vincent Health Ctr.*, 2022 WL 865818, at *4 (W.D. Pa. Mar. 23, 2022)(citing *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010)). Defendants admit that the first two elements of the prima facie case of discrimination have been met. ECF No. 27 ¶ 10 ("For purposes of the Motion to Dismiss, the first and second elements of Sturgis' disability discrimination claims are not in dispute...."). The Court is left with the issue of causation: whether Plaintiff has sufficiently alleged (1) the adverse employment action he suffered was (2) as a result of his disability.

An adverse employment action is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Cunningham v. Nordisk*, 615 F. App'x 97, 100 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir.2004)). Causation can be demonstrated by factual allegations that support a logical inference of causation between the alleged disability and the adverse employment action. *See Rubano v. Farrell Area Sch. Dist.*, 991 F. Supp. 2d 678, 700 (W.D. Pa. 2014)(internal quotation marks and citations omitted.); *Jakomas v. City of Pittsburgh*, 342 F. Supp. 3d 632, 650 (W.D. Pa. 2018).

The Second Amended Complaint posits three alleged adverse employment actions: an altered work schedule, the written warning related to breakfast stocking, and the termination on March 21, 2024. ECF No. 20 ¶¶ 23, 27 31. For each, the Court examines the pleaded facts to determine whether the actions as pled constitute adverse employment actions and then the Court analyzes whether Plaintiff has plausibly alleged that the actions were taken as a result of Plaintiff's disability.

*Schedule Change*

The Second Amended Complaint explains that prior to his medical leave, Plaintiff's usual shift was Monday through Friday. ECF No. 20 ¶ 22. Upon his return to work, he alleges he was

7

"continuously scheduled to work every weekend." *Id.* ¶ 23. He contends this new schedule was unfavorable given his recent return from cancer treatment and his Asperger's Syndrome, a condition known to the Defendants, for which such scheduling changes can pose significant difficulties. The parties present competing characterizations of the alleged schedule change. Defendants argue that because he does not "allege any reduction in hours or pay," the schedule change was a "mere inconvenience." ECF No. 27 at 11. Plaintiff disagrees.

Not every alteration of employment conditions gives rise to an adverse action. The standard is an objective one: "whether a reasonable person would find the employment conditions substantially worsened." *Dilenno v. Goodwill Indus. of Mid– E. Pa.*, 162 F.3d 235, 236 (3d Cir.1998). Minor or trivial actions that merely occasion unhappiness are insufficient. *Merit v. Southeastern Pennsylvania Transit Auth.*, 315 F. Supp. 2d 689 (2004). It is clear, however, that"[e]ven a mere schedule change to weekend work can qualify as an adverse employment action." *Wesley v. Palace Rehab. & Care Ctr., L.L.C.*, 3 F. Supp. 3d 221, 235 (D.N.J. 2014)(citing *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006)); *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 787 (3d Cir. 1998)("The change in his schedule may have altered the terms, conditions, or privileges of his employment.")(internal quotations omitted).

Here, Plaintiff's pleading lacks precision -- it is unclear whether Plaintiff was scheduled for five, six, or seven days per week upon his return. Drawing all reasonable inferences in Plaintiff's favor, as the Court must at this stage, the allegation that he was scheduled to work "every weekend" following a Monday-to-Friday schedule permits the reasonable inference that his workweek was expanded to seven days. Such a change—from a 40-hour work week to what could be a 56-hour work week—cannot be dismissed as a mere inconvenience. A reasonable person could find being required to work every day of the week, which includes more demanding

8

weekend shifts, substantially worse than a standard five-day schedule. *See e.g., Jones v. Barnhart,* 349 F.3d 1260, 1269– 70 (10th Cir. 2003) (an increased workload can constitute a materially adverse employment action); *Ledbetter v. Alltel Corp. Servs., Inc.,* 437 F.3d 717, 724 (8th Cir.2006) (increased workload that materially changes an employee's duties can constitute an adverse employment action). Moreover, even assuming Plaintiff was not scheduled seven days per week, reassignment to weekend-only shifts following medical leave plausibly altered the conditions of employment in a materially adverse manner. Had the change merely shifted his five-day schedule to different days, (for example Sunday through Friday) the claim would be far less compelling and a closer question. As pled, the change in work schedule constitutes a plausible adverse action.

Finally, the temporal proximity between Plaintiff's return from FMLA leave and this immediate schedule change is sufficient, at this juncture, to support an inference of causal connection. Plaintiff has stated a plausible claim of disability discrimination based on this adverse employment action.

*Written Warning*

Plaintiff alleges he was issued a written reprimand on March 6, 2024 "relating to not properly stocking breakfast" approximately eight or nine days before. ECF No. 20, ¶ 27. Plaintiff did not understand breakfast stocking to be part of his job duties as an overnight employee. *Id.* at ¶ 29. Plaintiff never received such a warning prior to being managed by Ms. Boyd. *Id.* at ¶ 30. In his opposition brief, Plaintiff argues that the issuance of this warning was discriminatory.

A written reprimand may, in certain contexts, qualify as an adverse employment action under the Americans with Disabilities Act. *Rubano*, 991 F. Supp. 2d at 708 ("Some courts have found that a written reprimand may constitute a materially adverse action")(collecting cases). This

is most clearly established where the reprimand effects a tangible, material change in the terms or conditions of employment. *See, e.g.*, *Campo v. Mid-Atl. Packaging Specialties, LLC*, 564 F. Supp. 3d 362, 383 (E.D. Pa. 2021) (establishing written warnings can be considered adverse employment actions when a progressive discipline policy is in place).

That said, the mere issuance of a warning, without more, does not automatically cross this threshold. The critical inquiry ultimately turns on the warning's concrete consequences. If a written reprimand results in no immediate alteration to an employee's duties, schedule, compensation, or opportunities for advancement, courts have consistently declined to classify it as an adverse action. *See e.g.*, *Deans v. Kennedy House, Inc.*, 998 F. Supp. 2d 393, 403-04 (E.D. Pa. 2014) (concluding that warnings which do not alter the terms of employment remain non-adverse until acted on by the employer); *Sabbrese v. Lowe's Home Centers, Inc.*, 320 F. Supp. 2d 311, 325 (W.D. Pa. 2004) (holding that a warning's potential for future consequences, without present effect, was insufficient).

Here, the Second Amended Complaint plausibly clears this threshold at the pleading stage. Construing the allegations in the light most favorable to Plaintiff, the Court may reasonably infer that the written warning was not a meaningless or purely administrative act, but part of a progressive disciplinary framework. *See* ECF No. 20-5 (describing a "Disciplinary Process"). Within such a structure, a written reprimand serves as a building block toward more serious sanctions and therefore carries tangible employment consequences. The Court also notes Plaintiff's allegation that relevant personnel records were inadvertently discarded by Defendants, limiting Plaintiff's ability to plead greater specificity at this juncture. *See* ECF No. 20 ¶¶ 38-39. Taken together, these allegations are sufficient, at this stage, to plausibly allege that the warning, issued eight or nine days after the incident, constituted an adverse employment action because it

operated within a progressive disciplinary scheme capable of affecting Plaintiff's compensation, terms, conditions, or privileges of employment.

The inquiry does not end there, however. Next, the Court examines whether Plaintiff has adequately pled the nexus prong – in other words, that the adverse employment action was on account of his disability. In this regard, Plaintiff's principal argument rests upon temporal proximity. He notes the warning followed his return from FMLA leave. Plaintiff's argument mischaracterizes the allegations of the Second Amended Complaint which indicates a gap of approximately four months between Plaintiff's return to work in November 2023 and the reprimand in March 2024. *Id.* ¶¶ 19-21, 27.

Although temporal proximity may, in limited circumstances, support an inference of causation, the Third Circuit has made clear that timing alone suffices only where is "unusually suggestive." *LeBron v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232-33 (3d Cir. 2007) (holding that a three-month gap, without more, was insufficient to establish causation). A lapse of approximately four months, standing alone, is not usually suggestive and does not plausibly establish the requisite nexus at the pleading stage. *See, e.g., Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003) (explaining that absent unusually suggestive timing, additionally evidence is required); *Capps v. Mondelez Global, LLC*, 147 F.Supp.3d 327, 338-39 (W.D. Pa. 2015) (applying *LeBoon* standard in ADA context and requiring more than timing alone were gap was several months); *Thompson v. Liberty Mut. Ins.*, 2021 WL 1712277, at *5 (D.N.J. Apr. 29, 2021)("lapse of two-and-half months by itself is not unusually suggestive of discrimination"). Where the lapse in time is of this greater magnitude, a plaintiff must proffer additional evidence of a "pattern of antagonism" or other circumstantial evidence to permit an inference of causation. *See Capps*, 147 F. Supp. 3d at 337, *aff'd*, 847 F.3d 144 (3d Cir. 2017)("In

11

the absence of an unusually suggestive temporal proximity, [Plaintiff] must show evidence that [Defendant] engaged in a pattern of antagonism in the intervening period.")(internal quotations and citations omitted); *Beird v. Lincoln Univ. of Commonwealth Sys. of Higher Educ.*, 487 F. Supp. 3d 270, 278 (E.D. Pa. 2020) (if an unusually suggestive timeframe is not present then a plaintiff can prove causation through a pattern of antagonism coupled with timing to establish a causal link.). In other words, when, as is the case here, temporal proximity is not close enough to imply direct causation, "[courts] apply the 'timing plus other evidence" test to determine whether other pleaded facts suggest motive. *See Blakney v. City of Philadelphia*, 559 F. App'x 183, 186 (3d Cir. 2014).

Here, Plaintiff alleges a series of employment actions that, at this preliminary stage, we find sufficient to satisfy his burden. He claims that despite a lengthy tenure under four managers without any record of reprimand, he was subjected to a written warning for a minor infraction, a schedule change to a more onerous shift, and ultimately, termination for an action he previously requested and was given permission to engage in. Accepting these well-pleaded allegations as true, the Court concludes that the Plaintiff has carried his burden at this juncture for purposes of the present motion.

*Termination*

Plaintiff was terminated shortly after a guest complained that he was using a computer to play games. ECF No. 20 ¶ 31-33. Plaintiff states that he had previously been given permission to use his computer when he was not busy at night, and that he had never been given a verbal or written warning about computer usage. *Id.* ¶ 33. Termination, of course, constitutes an adverse employment action within the meaning of the ADA. *Bossi v. Bank of Am.*, 2016 WL 4446444, at

12

*3 (M.D. Pa. Aug. 19, 2016) ("It is well settled that termination is an adverse employment action.").

The Court is left with the issue of causation: whether Plaintiff has sufficiently alleged the adverse employment action he suffered was the result of his disability. On this particular issue, the Court notes that Plaintiff simply avers that termination for such a "minor infraction" was discriminatory and retaliatory. But it is critical that Plaintiff need not have "detailed evidence," but need only give Defendants fair notice of his claim and "raise the reasonable expectation that discovery will uncover evidence of discriminatory motive." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 267 (3d Cir. 2021) (internal quotation marks omitted). Defendants' explanation for the termination apart from disability may be relevant at summary judgment, but here, Plaintiff has adequately alleged that he was plausibly terminated on the basis of his disability given the nature of the infraction, the previously requested permission to play computer games, and the fact that he previously had no negative employee remarks and presumably had played video games on his computer before.

Although the Court concludes that Plaintiff has plausibly alleged discriminatory termination, that determination does not end the inquiry. Plaintiff also advances a distinct theory of liability under the ADA - namely that Defendants failed to provide a reasonable accommodation for his disability. Such a claim must be assessed under its own distinct legal framework.

Under the ADA, discrimination includes not only adverse actions taken because of disability, but also an employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *See* 42 U.S.C. § 12112(b)(5)(A). At the motion to dismiss stage, a plaintiff asserting a failure-to-accommodate claim under the ADA need only allege facts that plausibly establish: (1) he is disabled within the

meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the position, with or without reasonable accommodation; and (3) his employer failed to provide a reasonable accommodation. *See EEOC v. FedEx Ground Package System, Inc.,* 158 F.Supp.3d 393, 399 (W.D. Pa. Jan. 25, 2016) (quoting *Hohider v. UPS, Inc.,* 574 F.3d 169, 186 (3d Cir. 2009)). Importantly, a failure-to-accommodate claim does not require allegations of discriminatory animus; the failure itself constitutes the discrimination. *Reyer v. Saint Francis Country House,* 243 F.Supp.3d 573, 595 (E.D. Pa. March 20, 2017) (quoting *Sharbaugh v. West Haven Manor,* LP, 2016 WL 6834613, at *7 (W.D. Pa. Nov. 21, 2016)). To survive dismissal, a complaint must plausibly allege that the employer knew of the disability and the request for accommodation and failed to engage in the interactive process in good faith or otherwise denied a reasonable accommodation.

The Second Amended Complaint does not plausibly allege a failure-to-accommodate claim. It contains no factual assertion that Plaintiff requested a reasonable accommodation for either his cancer treatment or his Asperger's Syndrome, nor does it allege that any such request was denied. The pleading is devoid of facts suggesting that Defendants refused to provide an accommodation or failed to engage in the interactive process. Although the Second Amended Complaint does not expressly allege that Plaintiff requested medical leave, the Court assumes, drawing all inferences in Plaintiff's favor, that leave was sought and granted, particularly during his hospitalization from September 18th through November 3rd. Even with that inference, however, there are no allegations that any requested accommodation was denied. Accordingly, Plaintiff cannot proceed on a failure to accommodate theory and the motion to dismiss will be granted in this regard.

14

Given that Plaintiff has had three opportunities to plead this failure to accommodate claim and given his repeated failure to do so,[4] further leave to amend will not be permitted. *See Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (listing "repeated failure to cure deficiencies by previous amendments" as a factor supporting denial of amendment").

### C. The Retaliation Claims

Plaintiff alleges that he "was harassed, humiliated, disciplined, terminated, and discriminated against by Defendants in retaliation of the disclosure of his medical conditions, using medical leave, and the assertion of his rights" under ADA, FMLA, and PHRA. ECF No. 20 ¶ 69.

The elements of a retaliation claim under the ADA, the FMLA, or the PHRA are materially the same. *Lott v. Thomas Jefferson Univ.*, 2020 WL 6131165, at *9 (E.D. Pa. Oct. 19, 2020). To state a prima facie claim, a plaintiff must allege that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. *Dreibelbis v. County of Berks*, 438 F. Supp. 3d 304, 319 (E.D. Pa. 2020).

As relevant here, protected activity under the ADA includes requesting a reasonable accommodation. See *Barber v. Subway*, 131 F. Supp. 3d 321, 329 (M.D. Pa. 2015) (quoting *Sulima*, 602 F.3d at 188-89). see also Krouse v. American Sterilizer Co., 126 F.3d 494 (holding that a request for accommodation constitutes protected activity); *Laguna v. Chester Housing Auth.*,

---

[4] Plaintiff filed the original complaint on September 3, 2024 [ECF No. 1]. Defendants moved to dismiss the original complaint on January 24, 2025. ECF No. 9. Plaintiff then filed a First Amended Complaint on February 14, 2025 [ECF No. 11] and Defendants moved to dismiss that pleading [ECF No. 14]. Finally, and presently at issue, Plaintiff filed the Second Amended Complaint [ECF No. 20] and Defendants again moved to dismiss [ECF No. 26].

616 F. Supp. 3d 462, 469 (E.D. Pa. 2022) (same). Likewise, requesting or taking medical leave may constitute protected activity under the FMLA.

In opposition to the motion to dismiss, Plaintiff identifies two forms of protected conduct: (1) his request for medical leave, and (2) his request for the reinstatement of his original Monday-through-Friday schedule, which he characterizes as a request for accommodation.

Defendants move to dismiss the retaliation claims on two grounds. First, they argue that Plaintiff has not plausibly alleged that he requested an accommodation within the meaning of the statutes. Second, they contend that the Second Amended Complaint fails to plead facts establishing a causal connection between Plaintiff's medical leave and the termination of his employment.

At this stage, however, Plaintiff's burden is modest. Accepting the well-pleaded allegations as true and drawing all reasonable inferences in his favor, the Court cannot conclude – albeit narrowly—that Plaintiff has failed to allege protected activity or a plausible causal link. The motion to dismiss the retaliation claims will therefore be denied.

**D. The Hostile Work Environment Claim**

Plaintiff alleges that he "experienced ongoing harassment" related to "his medical conditions, medical leave, requested accommodations and complaints" and was therefore subjected to a hostile work environment. ECF No. 20 ¶¶ 72-73. To state a hostile work environment claim under the ADA and PHRA,[5] a plaintiff must allege:

---

[5] Hostile work environment claims under the PHRA are subject to the same analysis as hostile work environment claims under the ADA. *See, e.g., Hatch*, 755 F. Apex at 201. However, because the FMLA does not provide for a "hostile work environment" cause of action (*see Hilton v. Home Depot, Inc.*, 2022 WL 837207, at *3 (E.D. Pa. Mar. 21, 2022) (collecting cases)), this Court only reviews the hostile work environment claim as it relates to the ADA and PHRA. If Plaintiff intended to raise such a claim under the FMLA, it is dismissed with prejudice as amendment would be futile.

16

(1) he is a qualified individual with a disability under the ADA; (2) he was subject to unwelcome harassment; (3) the harassment was based on his disability or a request for an accommodation; (4) the harassment was sufficiently  severe or pervasive to alter the conditions of his employment and to create an abusive working environment; and (5) that [his employer] knew or should have known of the harassment and failed to take prompt effective remedial action.

*Hatch v. Franklin Cnty.*, 755 F. App'x 194, 201–02 (3d Cir. 2018) (citations omitted); *see also Woods v. AstraZeneca Pharms., L.P.*, 659 F. Supp. 3d 512, 544 (M.D. Pa. 2023) (citing *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999)). Dispositive to the Court's analysis is whether the harassment was sufficiently severe or pervasive. Thus, the Court begins with the fourth element.

A hostile work environment exists when the "workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *AMTRAK v. Morgan*, 536 U.S. 101, 115 (2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). In determining whether a work environment is sufficiently abusive, courts look at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris.*, 510 U.S. 17, 23 (1993). "[O]ffhanded comments, and isolated incidents (unless extremely serious)" are insufficient to sustain a hostile work environment claim." *Caver v. City of Trenton*, 420 F.3d 243, 263 (3d Cir. 2005) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998)). A hostile work environment claim should not be used to enforce a "a general civility code" and "the ordinary tribulations of the workplace" are not grounds

17

for a hostile work environment claim. *Stucke v. City of Philadelphia*, 685 Fed.Appx. 150, 154 (3d Cir. 2017) (internal quotations and citations omitted).[6]

Measured against this standard, the factual allegations in the Second Amended Complaint fall short. Plaintiff premises his claim on a series of discrete employment actions that might be sufficient for a retaliation or discrimination claim, at this stage, but not for the more demanding pleading required for a hostile work environment claim. He alleges that upon his return from medical leave, his manager "continuously scheduled [him] to work every weekend," a departure from his previous Monday-through-Friday schedule. ECF No. 20 ¶ 23. He further alleges that he received a "written warning" for allegedly failing to stock breakfast, an infraction he contends was a simple misunderstanding unworthy of a write up. *Id.* ¶ 27. Finally, he was terminated for playing computer games after a guest complaint, an act for which he claims he had prior permission. *Id.* ¶¶ 31-33.

While the plaintiff categorizes these actions as "ongoing harassment," (*id.* ¶ 72), it is not enough that "the employee subjectively perceives [the environment] as abusive or hostile[.]" *Ullrich v. U.S. Sec'y of Veterans Affairs*, 457 F. App'x 132, 140 (3d Cir. 2012). The environment must also be "objectively hostile or abusive," one "a reasonable person would find hostile or abusive." *Id.* (quoting *Harris*, 510 U.S. at 21). As plead, a change in work schedule, a single written reprimand, and a termination (for a stated reason) are insufficient to plead a cause of action for hostile work environment. None of these actions, as described, are objectively physically

---

[6] It is well established in the Third Circuit that discrimination, hostile work environment, and retaliation claims brought under the PHRA are subject to the same analysis as those claims brought under Title VII. *Gomez v. Allegheny Health Svcs., Inc.*, 71 F.3d 1079, 1084 (3d Cir.1995). Further, "[t]he Third Circuit has assumed without specifically deciding that claims may be brought pursuant to the ADA ... for a hostile work environment under substantially the same framework as a Title VII hostile work environment claim." *Magerr v. City of Philadelphia*, 2016 WL 1404156, at *10 (E.D. Pa. Apr. 11, 2016).

threatening or severely humiliating. There is no allegation of a single offensive utterance, much less a constant barrage of ridicule or abuse based on his disability. The Second Amended Complaint is also silent as to any facts suggesting that these incidents unreasonably interfered with his ability to perform his work.

What remains is a narrative of employment decisions Plaintiff views as unfair or retaliatory. The conduct alleged here, while potentially relevant to other legal theories, describes the very "ordinary tribulations of the workplace" that fall outside the ambit of a hostile work environment. The Second Amended Complaint fails to plead facts that plausibly suggest the workplace was permeated with discriminatory intimidation, ridicule, and insult that was severe or pervasive. Consequently, Plaintiff has not met his burden of alleging the requisite severity or pervasiveness, and his hostile work environment claim must fail. Like the failure to accommodate claim, further leave to amend will not be permitted because Plaintiff has already had two opportunities to replead this claim.

### E.    The Tortious Interference Claim

Finally, Plaintiff alleges that Diamond Hospitality took steps "to interfere with or otherwise prevent Plaintiff from being employed with Penn State Cobblestone." ECF No. 20, ⁋ 78.

Plaintiff concedes that evidence in his possession at this stage of the litigation suggests that Defendants are joint employers, a concession that would foreclose, as a matter of law, the tortious interference claim. *See* ECF No. 30 at 24. Should later proceedings in this litigation, however, reveal through discovery that Defendants are not in fact joint employers, Plaintiff will be at liberty to seek reinstatement of this claim at an appropriate time. Accordingly, Count IV is dismissed without prejudice.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 26) will be granted in part and denied in part. The motion under Rule 12(b)(5) will be denied as moot. As to the motion under Rule 12(b)(6), it will be denied as to Count I (Disability Discrimination) and Count II (Retaliation). The motion will be granted as to Count III (Hostile Work Environment) which will be dismissed with prejudice and Count IV (Tortious Interference) which will be dismissed without prejudice. An appropriate order will follow.